UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KTS (XXX-XX-8407)                              CIVIL ACTION NO. 09-cv-1197

VERSUS                                         JUDGE HICKS

US COMMISSIONER SOCIAL                         MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

Plaintiff, born in 1981, applied for disability benefits based on "slow learning." She completed special education classes through the ninth grade. Plaintiff reports that her mother has obtained jobs for her, but she has a history of getting "let go" due to slowness and "shutting down." ALJ Deborah A. Arnold conducted a hearing and issued a decision that found that Plaintiff was not disabled because she could perform the demands of her past relevant work as a dishwasher and short order cook.

The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial relief. It is recommended, for the reasons set forth below, that the Commissioner's decision be reversed and the case be remanded for further proceedings.

**Determination of Disability**; **The Five-Step Process**

Disability Insurance Benefits eligibility and amount are tied to the applicant's earnings history. Supplemental Security Income or SSI has no minimum earnings prerequisite and pays a fixed monthly benefit to all recipients. The law governing the determination of

disability is the same for both. Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989).

A five-step sequential evaluation is employed:

1. The claimant must not be engaging in substantial gainful work activity.

2. The claimant must have a "severe" impairment as defined by Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

3. If the impairment meets or equals an impairment listed in Appendix 1 of the regulations the person will be considered disabled without consideration of vocational factors.

4. A claimant capable of performing his past relevant work is not disabled.

5. If a claimant cannot perform his past work, other factors including age, education, work experience, and residual functional capacity ("RFC") must be considered to determine if he can perform other work.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1520 (DIB); and 416.920 (SSI). The claimant has the burden on the first four steps of the analysis. Bowen v. Yuckert, 107 S.Ct. 2287, 2294 n. 5 (1987). The burden shifts to the Commissioner on the fifth step. Id. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

**Issues on Appeal**

Plaintiff lists two issues in her Statement of Errors: (1) the ALJ's step-four determination that Plaintiff can perform her past relevant work is not based on substantial

evidence; and (2) the ALJ's assessment of Plaintiff's RFC does not comport with relevant legal standards.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Facts**

A school assessment shows that Plaintiff was found to have slow academic progress but good teacher and peer relationship and a good attitude. Her specific limitations included reading, math, and written language skills, and she exhibited poor task completion and poor academic motivation. She was able to remain on task during routine classroom activities. She reported that she got along well with other students but did not like school or her teachers. Disciplinary records reflect acting out in class. Tr. 157-67.

The ALJ and parties point to only one firsthand assessment of Plaintiff's mental abilities. That was a 2008 consultative examination by clinical neuropsychologist Thomas

E. Staats, Ph.D. Plaintiff was 26 at the time of the examination. She was adequate in appearance, had good hygiene, and her speech was normal with clear enunciation. Her thinking was intact, logical and coherent. She had an inadequate fund of general information, and she had a "very weak and suspicious vocabulary which would have indicated performance well into the low mentally retarded range." She could not spell even very simple words. Her short-term memory was intact, but Plaintiff performed in the "suspicious range" on one test. She portrayed an inability to maintain focus during the interview. Her persistence was "poor," her responses were brief, and she sometimes gave up easily. She had inadequate social judgment and answered one question in an anti-social manner and another in an aggressive manner. "Overall, she was able to interact poorly on a 1:1 basis due to mostly flat affect, distractibility, very bradyphrenic responding, sometimes giving up easily, apparent passive-aggressiveness, handplay at points, sitting with her head down a lot, and poor eye contact."

Plaintiff was given an intelligence test and scored a Full Scale IQ of 54, which would put her in the extreme lower limits of the mild range of mental retardation. However, validity analysis indicated malingering of the severity of any cognitive deficits, and one test measure indicated that Plaintiff actually had to know the correct answer and purposefully gave the wrong one to get the score she did.

Dr. Staats stated in a summary of his report that Plaintiff's thinking appeared adequate in regard to content and reality testing. Her understanding was intact. Her memory was

variable but mostly impaired but malingered. Sustained concentration was inadequate but malingered. Persistence, social interaction, and adaptation were all "poor." Tr. 179-82. The term poor, used to describe the degree of impairment in these areas, is important as will be seen below.

William L. Berzman, Ph.D., a state agency medical consultant, did not examine Plaintiff but did review her records. He completed a mental RFC assessment. A review of his report shows that he examined the School Board records and the report from Dr. Staats, discussed above, as well as application documents in which Plaintiff described her activities of daily living. Dr. Berzman found that there was an impairment that could cause some limitations, but not to the extent Plaintiff alleged. He completed a form and marked boxes to indicate the degree of limitation in several areas. He found that Plaintiff was either not significantly limited or only moderately limited in each of the several areas, including social interaction, adaptation, and sustained concentration and persistence.

Dr. Staats routinely issues consultative reports in connection with claims. Plaintiff's counsel wrote Dr. Staats, in connection with an earlier case, and asked him for a clarification of the language Staats used to describe various mental impairments. Counsel noted that Dr. Staats often, in his many consultative evaluations, describes mental activities such as concentration and persistence using the words marginal, poor, adequate, and the like. However, the Agency uses the terms none, mild, moderate, marked, and extreme. Counsel

asked Dr. Staats how his scale corresponds to the terms used by the Agency. Dr. Staats sent a one-page fax that set forth the following:

> Adequate/fair = none
> Marginal = mild
> Marginal-to-poor = moderate
> Poor = marked to extreme
> Impaired = extreme

At the hearing before the ALJ, counsel mentioned this correspondence. Tr. 26. He sent his letter and Dr. Staats' fax response to the ALJ that same day. Tr. 203-05. Dr. Berzman, however, did not have the Staats fax before him when he prepared his assessment.

Plaintiff testified at the hearing that her mother, when working at a Dairy Queen and the Relay Station Restaurant, got her jobs as a cook or dishwasher in those same restaurants. Plaintiff reported that she was fired from the jobs because she "couldn't handle it" and was too slow. Plaintiff lives with her mother and two siblings. She helps clean sometimes but "really don't like to do it." Tr. 29-37. The ALJ asked Plaintiff the main reason she could not work. Plaintiff struggled to answer the question and eventually said it depended on the kind of job. The ALJ asked Plaintiff to assume she was offered a job as a cook like she had at Dairy Queen. Plaintiff said if the job was "hard" then she probably could not do it. When asked what would make the job hard, she said, "like just like construction work or something." The ALJ asked Plaintiff to focus on the job of cook, and he again asked Plaintiff to state what would make the job hard. Plaintiff answered, "Nothing." Tr. 38-39.

Plaintiff's aunt testified that when Plaintiff tried to work she had to be shown every task and constantly watched. Sometimes her work had to be fixed, and she simply could not do the jobs without help from either her mother or sister. "She wouldn't do it, or couldn't do it. Whatever." Plaintiff was sent home from one job after just a few hours. The aunt testified that Plaintiff had to be supervised even bathing and getting dressed. Tr. 40-43.

**Analysis**

The ALJ found at step two that Plaintiff suffered from a severe impairment in the form of a personality disorder. She reviewed the evidence discussed above and, proceeding with the analysis, found that Plaintiff had the RFC to "perform simple repetitive tasks at all exertional levels that do not involve significant judgment or frequent changes in the work setting." Tr. 18-20. The ALJ wrote that she gave "great weight" to the opinion provided by Dr. Berzman. She did not, in discussing her RFC assessment, make any specific reference to Dr. Staats' report or the correspondence that explained Staats' terminology. A vocational expert ("VE") testified that a person with Plaintiff's age, education, and background could, given the assessed RFC, perform the demands of Plaintiff's work as a dishwasher and short order cook. Tr. 46-47. The ALJ accepted that testimony and found at step four that Plaintiff was not disabled. Tr. 21.

Dr. Staats' made findings in his report that Plaintiff was "poor" in the areas of persistence, social interaction, and adaptation. His fax stated that he means marked to

extreme when he says poor. Plaintiff argues that this evidence undermines the ALJ's RFC, which does not reflect such serious limitations.

The Commissioner responds that the ALJ was entitled to give more weight to Dr. Berzman's opinion and did not have to give controlling weight to Dr. Staats. An ALJ may properly rely on a non-examining source's assessment when those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining source. Carrier v. Sullivan, 944 F.2d 243, 246 (5th Cir. 1991). Dr. Berzman is a non-examining source, and his report apparently conflicts in material respects with the report of Dr. Staats, who actually examined Plaintiff. It is also evident that Dr. Berzman based his findings in large degree on the report from Dr. Staats, but apparently without the proper interpretative key to divine that Dr. Staats' terminology intended a much greater degree of limitation than the average person might believe was suggested by his language.

This rather unfortunate situation, caused largely by Dr. Staats' decision to use language not employed in the Agency's regulations, manuals, and forms, has happened before. Reversal and remand was ordered in a very similar situation in Thompson v. Astrue, 2009 WL 2222529 (W.D. La. 2009) (M.J. Hayes; J. Stagg) and Alexander v. Astrue, 2008 WL 918527 (W.D. La. 2008) (M.J. Hayes). Some denials have been affirmed despite the impact of the Staats facsimile because there was competing firsthand evidence from examining physicians on which the ALJ could rely. MLM v. Astrue, 2009 WL 3156542

(W.D. La. 2009) (M.J. Hornsby) and Bell v. Commissioner, 2009 WL 5125418 (W.D. La. 2009) (M.J. Hornsby).

There is no competing assessment from an examining source in this case. Dr. Staats' report, as clarified, suggests a degree of limitation much greater than the RFC, and there is no competing evidence on which the ALJ may properly rely to outweigh those findings. Also, an ALJ's decision must indicate why evidence that would support a claim is rejected. Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) ("While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.")

The decision must, unfortunately, be reversed and remanded. The Agency may, on remand, seek further clarification from Dr. Staats. If the Agency has not already done so, it is asked to instruct Dr. Staats to begin using language contemplated by the Agency's regulations, rulings, and manuals rather than terms that have caused confusion and reversal in several cases that have come before the courts. Clarification or the use of precise, defined language could save untold hours expended by the Agency, the courts, and counsel for claimants. The Agency will also be free on remand to obtain additional evidence. An ALJ may find that the extent of limitations suggested by Dr. Staats' report are not supported by the evidence but, if she does so, she must point to a competing examining source and explain her reasons.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed pursuant to the fourth sentence of 42 U.S.C. § 405(g) and that this case be remanded for further proceedings consistent with the court's decision.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of July, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE